UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF VIRGINIA
RICHMOND DIVISION

UNITED STATES OF AMERICA

v.

CHONG LAM, *et al.*,                                    Action No. 3:07-CR-374

Defendants.

## MEMORANDUM OPINION

THIS MATTER is before the Court on Defendants' Post-Trial Motion Pursuant to

Rules 29(c) and 33 of the Federal Rules of Criminal Procedure (Doc. No. 313) and

Defendants' Motion to Dismiss or for a New Trial for Prosecutorial Misconduct and

Supplemental Argument in Support of Defendants' Motion for a New Trial Pursuant to Rule

33 (Doc. No. 346). The parties appeared before the Court on November 4, 2010, to present

oral arguments. For the reasons stated below, Defendants' Motions are DENIED.

## I.    BACKGROUND

Defendants Chong Lam ("Lam") and Siu Yung Chan ("Chan") were the owners and

officers of several companies that produced and imported non-infringing, infringing, and

counterfeit luxury goods, including wallets and handbags, into the United States. Defendants'

companies were actually corporations used to thwart port authorities' attempts to identify

and confiscate counterfeit or infringing products. Lam and Chan employed Defendant Eric

Yuen ("Yuen") in several of their corporations.

Between 2002 and 2005, agents with United States Customs and Border Protection ("CBP") seized myriad containers of handbags and wallets imported from China. The items were imported into various ports throughout the United States and CBP agents seized Defendants' merchandise from ports in Houston, Texas, Newark, New Jersey, Los Angeles, California, New York, New York, and Norfolk, Virginia. After each seizure, CBP agents issued seizure notices to Defendants' various corporations informing them that CBP seized the goods because they potentially violated United States trademark laws.

A subsequent investigation revealed that Defendants imported into the United States more than 300,000 handbags and wallets in the names of different companies, including Global Import, Inc., Marco Leather Goods, Ltd., Marco USA Inc., The Perfect Impressions, Inc., LY (USA), Inc., CP (USA) Inc., and Coco USA. Whenever CBP agents would identify one corporation as an importer of counterfeit goods, Defendants would continue to import goods into the same port, but under a different corporate name. If Defendants believed CBP agents could identify them as responsible for importing counterfeit goods into a port, they would ship the goods to a different port.

A federal grand jury sitting in Richmond, Virginia returned a seven-count Superseding Indictment against Defendants on March 26, 2009, charging them with one count of Conspiracy to Traffic in Counterfeit Goods, in violation of 18 U.S.C. § 371, four counts of Trafficking in Counterfeit Goods, in violation of 18 U.S.C. § 2320(a), and two counts of Smuggling Goods into the United States, in violation of 18 U.S.C. § 545.

After a seven-day trial, a jury acquitted Yuen, but convicted Lam and Chan of one count of Conspiracy to Traffic in Counterfeit Goods, two counts of Trafficking in Counterfeit Goods, and two counts of Smuggling Goods into the United States. Defendants were convicted of counterfeiting a mark registered by Burberry Limited ("Burberry"), registration number 2,022,789, depicting a check pattern ("Burberry Check Mark"). Burberry also owns a registered mark, registration number 2,512,119 depicting an equestrian knight ("Burberry Knight Mark"), which was not charged in the Superseding Indictment. Burberry often uses the Knight Mark and Check Mark together on merchandise, but has not registered the two as a composite mark. Defendants' merchandise features a copyrighted mark consisting of a mounted knight integrated into a check pattern ("Marco Mark").

## II.    LEGAL STANDARD

### a.    Rule 29(c) Motion for Judgment of Acquittal

"A defendant may move for a judgment of acquittal, or renew such a motion, within 14 days after a guilty verdict or after the court discharges the jury, whichever is later." Fed. R. Crim. P. 29(c)(1). If the jury returned a guilty verdict, the court can "set aside the verdict and enter an acquittal." Fed. R. Crim. P. 29(c)(2).

The test for determining if a court should grant a motion for judgment of acquittal is "whether there is substantial evidence (direct or circumstantial) which, taken in the light most favorable to the prosecution, would warrant a jury finding that the defendant was guilty beyond a reasonable doubt." United States v. MacCloskey, 682 F.2d 468, 473 (4th Cir. 1982). If "after viewing the evidence in the light most favorable to the government, any

rational trier of fact could have found the elements of the offense beyond a reasonable doubt," the jury's verdict must stand. <u>United States v. United Med. & Surgical Supply Corp.</u>, 989 F.2d 1390, 1402 (4th Cir. 1993).

b. <u>Rule 33 Motion for a New Trial</u>

Rule 33 of the Federal Rules of Criminal Procedure provides that, upon a defendant's motion, a court "may vacate any judgment and grant a new trial if the interest of justice so requires." If the request for a new trial is based on newly discovered evidence, the defendant must file the Rule 33 motion within three years after the verdict or finding of guilty. Fed. R. Crim. P. 33(b)(1). If the request is for any other reason, the defendant must file the motion within fourteen days of the jury's verdict. Fed. R. Crim. P. 33(b)(2). Whether a defendant gets a new trial is left to the trial court's discretion. <u>United States v. Smith</u>, 451 F.3d 209, 216-17 (4th Cir. 2006). Courts should, however, use their discretion to grant a new trial sparingly, and only do so if "the evidence weighs so heavily against the verdict that it would be unjust to enter judgment." <u>United States v. Arrington</u>, 757 F.2d 1484, 1485 (4th Cir. 1985). When deciding whether to grant a motion for a new trial, the court is allowed to consider all evidence introduced at the trial and can evaluate trial witnesses' credibility. <u>Id</u>.

III. <u>DISCUSSION</u>

a. <u>Rule 29(c) Motion for Judgment of Acquittal</u>

Defendants argue that the Court should enter a judgment of acquittal pursuant to Rule 29(c) because, after giving the Government the benefit of all reasonable inferences, the evidence is insufficient to sustain a guilty verdict. Defendants set forth two reasons for their

position: (1) the Burberry and Marco marks are legally distinguishable and do not meet the legal threshold required by the trademark counterfeiting statute, and (2) it is unreasonable to conclude that the Marco Mark was not a composite mark.

Defendants cite <u>Schneider Saddlery Co., Inc. v. Best Shot Pet Products Intern., LLC</u>, No. 1:06-CV-02602, 2009 WL 864072, at *4 (N.D. Ohio Mar. 31, 2009), for the proposition that a mark is not a counterfeit if there are slight differences between it and a registered mark, "so long as [the differences] are apparent to the typical consumer upon minimal inspection." Defendants assert that their mark is legally distinguishable from the Burberry Check Mark because the Burberry Check Mark has white or very light-colored lines, whereas the Marco Mark has white and tan lines. Defendants also assert that the shapes of the marks are different, as the Burberry Check Mark features a square, whereas the Marco Mark is rectangular.  Because of these differences, Defendants assert that the Marco Mark is not substantially indistinguishable from the Burberry Check Mark and, thus, the evidence doesn't support a guilty verdict and a judgment of acquittal should be entered.

The Government, on the other hand, contends that the differences Defendants cite are not enough to escape liability under 18 U.S.C. § 2320, as a spurious mark does not have to be identical to a registered mark to be counterfeit.

The Court agrees with the Government. Defendants' argument that the marks on their handbags and wallets are legally distinguishable from the marks on Burberry's merchandise because they have a slightly different color and shape is unavailing. It simply cannot be that a defendant may modify a registered mark in trivial ways and escape liability

because the counterfeit is not identical to the registered mark.  The trademark counterfeiting statute's legislative history indicates as much:

> [A] mark need not be absolutely identical to a genuine mark in order to be considered 'counterfeit.' Such an interpretation would allow counterfeiters to escape liability by modifying the registered trademarks of their honest competitors in trivial ways.

130 Cong. Rec. H31676 (daily ed. Oct. 10, 1984) (Joint Statement on Trademark Counterfeiting Legislation). Because 18 U.S.C. § 2320 does not require that a spurious mark be identical to a registered mark to impose criminal liability for counterfeiting, Defendants' argument that their Marco Mark is legally distinguishable from Burberry's Check Mark because approximately twenty percent of the marks are different cannot prevail.

Defendants next argue that they are entitled to a judgment of acquittal because the Government did not introduce substantial evidence that the Marco Mark was not a composite mark. A composite mark is a mark that has several separate component marks. Boston Duck Tours, LP v. Super Duck Tours, LLC, 531 F.3d 1, 9 (1st Cir. 2008). "If a mark contains components that 'are so merged together that they cannot be regarded as separate elements . . . the mark is a single unitary mark.'" Id. (quoting 4 Thomas McCarthy, McCarthy on Trademarks and Unfair Competition § 19:66 (4th ed. 2008)). Defendants cite this anti-dissection rule as proof that the law requires that a registered composite only be compared to another composite, as "[t]he commercial impression of a trademark is derived from it as a whole, not from its elements separated and considered in detail." Estate of P.D. Beckwith, Inc. v. Comm'r of Patents, 252 U.S. 538, 545-46 (1920). Defendants assert that the

Government told the jury to ignore the question of whether the Marco Mark was a composite, which Defendants maintain was legally erroneous because the jury was not free to wholly ignore part of a composite mark. Defendants further argue that a composite mark creates a distinct commercial impression that is not substantially indistinguishable from the individual component marks. Thus, the Marco Mark is not substantially indistinguishable from either of its component pieces or the Burberry Check Mark or Equestrian Knight Mark.

The Government maintains that there was more than enough evidence at trial to support the jury's guilty verdict and that a rational jury found that Defendants' Marco Mark was substantially indistinguishable from the Burberry Check Mark. The Government states that it did not have to prove Defendants used a mark identical to or substantially indistinguishable from the Burberry Equestrian Knight Mark, which was not charged in the Superseding Indictment, or a hypothetical composite mark consisting of the Burberry Check Mark and Equestrian Knight Mark. The Government further contends that Defendants cannot escape liability for counterfeiting one registered mark just because they did not counterfeit a second registered mark typically used in conjunction with the first. This essentially means Defendants cannot escape liability for counterfeiting the Burberry Check Mark just because they did not counterfeit the Equestrian Knight Mark. Finally, the Government asserts that nothing limited its authority to prosecute Defendants for counterfeiting just one of two marks often used together on Burberry merchandise. See United States v. Yi, 460 F.3d 623, 629 n.4 (5th Cir. 2006) (stating that if an owner of two independent marks uses both marks on a product, each mark may be enforced independently

of the other, despite their combined use on one product). Consequently, because the jury was only required to find that Defendants counterfeited one Burberry mark, and because the jury so found, the jury verdict should stand.

The determination of whether two marks are substantially indistinguishable is exclusively within the purview of the jury. In the case currently before the Court, a rational jury could, and in fact did, reject Defendants' composite mark theory and found that the Marco Mark was substantially indistinguishable from the Burberry Check Mark. The Court will not disturb this finding. Accordingly, Defendants' Motion for Judgment of Acquittal pursuant to Rule 29 of the Federal Rules of Criminal Procedure is denied.

  b. Rule 33 Motion for a New Trial

Defendants urge the Court to grant them a new trial pursuant to Rule 33 because they believe the Government's errors at trial are reasonably likely to have affected the jury's judgment and there is a serious danger that a miscarriage of justice has occurred.

Whether prosecutorial misconduct is reversible depends on two factors: (1) whether the prosecutor's remarks or conduct were improper, and (2) whether the remarks or conduct prejudicially affected the defendant's rights such that he or she was deprived of a fair trial. United States v. Chorman, 910 F.2d 102, 113 (4th Cir. 1990).

  i. The Government's Remarks Were Improper

Defendants assert that the Government erroneously told the jury that, in evaluating whether marks are substantially indistinguishable, jurors must assess them from the standpoint of an ordinary consumer in the marketplace. Defendants maintain that the law

actually requires the jury to compare the spurious mark and the registered mark side-by-side to determine if they are substantially indistinguishable.

Defendants point to several occasions on which the Government argued or suggested incorrect law to the jury. Defendants first point to the cross examinations of defense witnesses Christopher Sprigman and Mark McKenna as examples of the Government's arguing the wrong law before the jury. Defendants assert that, during Sprigman's cross examination, the Government incorrectly suggested that the trademark system exists so customers do not have to compare products in the marketplace. Defendants interpret this as the Government's attempt to convey to the jury that it would be unfair to allow the jury to do a side-by-side comparison, as this is not what the average person does out in the marketplace. With respect to McKenna, Defendants assert that, during his cross examination, the Government suggested that the appropriate analysis for the jury is not a side-by-side comparison of marks, but rather an analysis that involves members of the jury putting themselves in the shoes of consumers in the marketplace.

Defendants also argue that, during closing arguments, the Government repeatedly and erroneously told members of the jury that they should evaluate both the substantially indistinguishable and likelihood of confusion elements of a counterfeiting claim by putting themselves into the shoes of the average consumer in the marketplace.

The Government argues that it did not err in stating the standard for evaluating whether an allegedly counterfeit mark is substantially indistinguishable from a registered mark. The Government asserts that to determine if two marks are substantially

indistinguishable, the jury must evaluate the marks from the perspective of the average purchaser, as opposed to an expert. The Government cites <u>Pepe Ltd. v. Ocean View Factory Outlet Corp.</u>, 770 F. Supp. 754, 758 (D.P.R. 1991), for the proposition that the determination of whether marks are substantially indistinguishable must be made from the standpoint of an average consumer, not from that of an expert. The Government maintains that this was not an error. Furthermore, the Government asserts that counsel held up an authentic Burberry handbag right next to a bag bearing Defendants' Marco Mark and told the jury to compare them. Thus, contrary to Defendants' assertion, the Government told the jury to do a side-by-side comparison and did not argue improper law.

The Government's comments regarding the standard for evaluating whether two marks are substantially indistinguishable were erroneous. Simply put, the Government's telling jurors on multiple occasions that they were to determine whether the marks were substantially indistinguishable by using the average person standard was erroneous. It has become clear to the Court that the Government does not understand the error it made. When determining if a spurious mark counterfeits a registered mark, the law requires the jury to compare the marks side-by-side to determine if they are substantially indistinguishable. <u>See</u>, <u>e.g.</u>, <u>United States v. Yamin</u>, 868 F.2d 130, 135 (5th Cir. 1989) ("[t]he jury compared the seized watches with originals or pictures of the originals" to determine if they were substantially indistinguishable); <u>Rolex Watch U.S.A., Inc. v. Canner</u>, 645 F. Supp. 484, 489 (S.D. Fla. 1986) ("[a]t the Hearing, counsel for the Plaintiff presented this Court with genuine watches and counterfeit watches for inspection. The Court placed both

products side-by-side and held them up for comparison."). Furthermore, determining whether two marks are substantially indistinguishable is solely and uniquely the province of the fact finder. In the case of a jury trial, this means members of the jury must use their own eyes to determine if the marks are substantially indistinguishable. Any insinuation of the "average purchaser," "average consumer," "average person," "ordinary consumer," or "ordinary purchaser," imports a mythical point of view of someone outside the jury room. This is improper because the law requires that the jury decide for themselves, with their own eyes, if marks are substantially indistinguishable. Thus, the jury is not to consider whether the "average consumer" would think the marks are substantially indistinguishable and the Government repeatedly recited the wrong legal standard to the jury.

In addition to repeatedly stating the wrong legal standard, the Government did not present any competent evidence with respect to whether the average consumer would have thought Defendants' Marco Mark and the Burberry Check Mark were substantially indistinguishable. The Government consistently referred to witnesses Beatrice Bartko and Frances Abel, both of whom purchased handbags bearing Defendants' counterfeit marks thinking they were authentic Burberry bags, as "the average consumer." The Government called Bartko and Abel as witnesses for the likelihood of confusion element of the counterfeiting claim only. Thus, their testimony could only be used as evidence that the average consumer would likely have been confused if she saw Defendants' merchandise in the marketplace. The Government did not err in using Bartko and Abel's testimony to make the point that they were confused when they looked at Defendants' merchandise, as the

purpose of their testimony was to prove the likelihood of confusion element of the

counterfeiting charges. The Government was not allowed, however, to use these witnesses as

evidence that the marks were substantially indistinguishable because they were not called

for that purpose. Thus, even if an "average consumer" analysis was relevant to the

substantially indistinguishable element, the Government presented no evidence that the

average consumer would have thought the marks were substantially indistinguishable.

### ii.  The Government's Comments Were Prejudicial

A court should consider several factors when determining if a prosecutor's remarks or

conduct were unduly prejudicial:

> '(1) the degree to which the prosecutor's remarks have a tendency to mislead
> the jury and to prejudice the accused; (2) whether the remarks were isolated or
> extensive; (3) absent the remarks, the strength of competent proof introduced
> to establish the guilt of the accused; and (4) whether the comments were
> deliberately placed before the jury to divert attention to extraneous matters.'

United States v. Adam, 70 F.3d 776, 780 (4th Cir. 1995) (quoting United States v. Harrison,

716 F.2d 1050, 1052 (4th Cir. 1983)). Courts must also consider whether defense counsel

invited the prosecutor's remarks, United States v. Young, 470 U.S. 1, 12-13 (1985), and

whether the court gave the jury a curative instruction, Harrison, 716 F.2d at 1053. No one

factor is dispositive. United States v. Lighty, 616 F.3d 321, 361 (4th Cir. 2010).

Defendants assert that each factor counsels in favor of a finding that the

Government's remarks were unduly prejudicial. First, Defendants argue that the

Government's remarks were prejudicial and misleading because the central inquiry in the

case was whether Defendant's Marco Mark and the Burberry Check Mark were substantially

indistinguishable and the Government argued that the marks were substantially

indistinguishable because Abel and Bartko were confused when they purchased Defendants'

handbags. Defendants further assert that, instead of telling the jury to compare the bags side-

by-side, the Government told the jury to imagine they were shopping and to rely on their

memories of what the registered Burberry Check Mark looked like in making the

substantially indistinguishable determination, which is misleading and prejudicial.

Defendants next assert that the remarks were extensive because the Government used

Abel's and Bartko's shopping experiences as a theme throughout its closing argument.

Specifically, Defendants assert that the Government repeatedly told the jury to consider

Abel's and Bartko's experiences when determining if the marks were substantially

indistinguishable, instead of telling the jury to focus on comparing the marks side-by-side.

With respect to the third factor, Defendants argue that, without the Government's improper

remarks, there was little proof to establish Defendants' guilt. Defendants offer as proof the

fact that the first trial, at which the Government did not use Abel and Bartko, ended in a

mistrial because of a hung jury.  For the fourth factor, Defendants argue that the

Government's comments were deliberate and made to divert attention to extraneous matters

because, despite numerous sustained objections, the Government continued to make

improper remarks and used Bartko's and Abel's testimony as evidence on an element for

which they were not called. Defendants argue that the fifth factor is satisfied because counsel

did not invite the Government's improper remarks. Finally, Defendants assert that the

Court's curative instruction was not sufficient to overcome the Government's conduct

because it is not apparent that all jurors understood that they were to engage in a side-by-side comparison of the marks to determine if they were substantially indistinguishable.

The Court finds that the Government's remarks were prejudicial. First, the Government did mislead the jury by conflating the standards for likelihood of confusion and substantially indistinguishable when counsel repeatedly told members of the jury to put themselves into the shoes of the "average purchaser" or "average consumer" when deciding if the Burberry Check Mark and Defendants' Marco Mark were substantially indistinguishable.

The Court further finds that the Government's comments were extensive. Counsel for the Government referred to an erroneous legal standard multiple times in both the closing argument and the rebuttal. John Zacharia, counsel for the Government, first told members of the jury that they should put themselves in the shoes of the average purchaser to determine if Defendants' Marco Mark and the Burberry Check Mark were substantially indistinguishable near the beginning of his closing argument. See Jury Trial Excerpts 12:9–12:11, June 9-10, 2010, ECF No. 301 ("Now, in considering this question, you have to make your determination from the perspective of an average purchaser, not an expert. An average purchaser."). Zacharia reiterated the theme moments later:

> So you as the jury have the job of standing up and putting yourselves in the shoes of an average purchaser, which is probably no longer anybody in this room because we have been in this room for a long time looking at these marks. So putting yourselves in the shoes of average purchasers on the street, purchasers like Bea Bartko, purchasers like Fran Abel. . . .

Jury Trial Excerpts 12:24–13:3, June 9-10, 2010, ECF No. 301.

Brian Hood, Zacharia's co-counsel, picked up on the theme during the rebuttal and continued to argue the "average consumer" standard to the jury. Within moments of beginning his rebuttal, Hood stated: "[a]nd as you look at the Gucci bags, the Block G, the Squared G . . . if you don't believe those are substantially indistinguishable from the perspective of an average person, an average consumer, you should find the defendants guilty." Excerpt from Proceedings 2:23–3:3, June 10, 2010, ECF No. 296. Hood followed this statement, after the Court sustained an objection by all three Defendants' counsel, with: "[b]ut what the government suggests, what the government submits, is this: [t]hat the evidence has proven that these bags are substantially indistinguishable from authentic marks owned by Burberry and Gucci to the average consumer." Excerpt from Proceedings 3:7-3:11, June 10, 2010, ECF No. 296. At this point, the Court allowed Hood to continue over objection of Defendants' counsel and indicated that the Court would clear up the confusion created by Hood with jury instructions. Despite several more objections, Hood continued to advance his argument that members of the jury should decide whether the marks were substantially indistinguishable by putting themselves into the shoes of the average purchaser:

> You can distinguish something, you can distinguish differences, and still, nonetheless, the mark could be substantially indistinguishable from the authentic mark. It is about common sense. It is about common sense from the perspective of the average, ordinary consumer. Excerpt from Proceedings 6:2–6:7, June 10, 2010, ECF No. 296.
>
> * * *
>
> And ladies and gentlemen of the jury, you have a difficult task. You have a difficult task, because you are supposed to assess these facts and look at these Burberry knock-offs and these Gucci knock-offs from the standpoint of an average consumer. You have been in this case listening to it for a week. You have already developed a level of expertise and a perception of detail that I

would argue is way above the average consumer. Excerpt from Proceedings 7:24–8:6, June 10, 2010, ECF No. 296.

* * *

Now, Mr. Zwerling in his closing arguments basically said you have to look at the differences. Sure, you do look at the differences. But you start with the similarities. That's what the ordinary consumer does. The ordinary consumer sees things and sees the similarities and is drawn to it based on the similarities. And just as Mr. McKenna admitted on cross-examination, compare the brown field, compare the black vertical stripes, compare the black horizontal stripes, compare the white or light stripes in between, compare the red field in the center. There are so many similarities, they are substantially indistinguishable to the ordinary purchaser. Excerpt from Proceedings 9:15–10:1, June 10, 2010, ECF No. 296.

* * *

Keep your eye on the perspective of the average person when you're looking at substantially indistinguishable. . . .  Excerpt from Proceedings 24:23–24:25, June 10, 2010, ECF No. 296.

* * *

Because counsel for the Government made improper remarks regarding the standard for determining if two marks are substantially indistinguishable no fewer than eight times during closing arguments, the Court believes that the remarks can be fairly described as extensive or pervasive.

With respect to the strength of the evidence without the remarks, the Court finds that the Government did not present a wealth of other evidence to prove the substantially indistinguishable element of a counterfeiting charge. There is, however, some evidence of conscious decisions made by Defendants that indicate Defendants likely knew they were culpable, which can bear on the substantially indistinguishable element of the counterfeiting charge. First, Defendants created multiple shell corporations to receive merchandise. That there were so many corporations with different names owned by the same people, engaging

in the same activity, indicates a conscious decision on Defendants' part to make it more difficult for CBP agents to track their activity. Second, Defendants imported the bags with the counterfeit marks into various ports throughout the country, despite the fact that their businesses were all headquartered in New York City, thereby making it even more difficult to track the illegal activity and trace it to Defendants. A related matter is the fact that Defendants received several seizure notices from the various ports indicating the goods seized could potentially counterfeit registered marks. If Defendants were not initially aware that their merchandise featured marks identical to or substantially indistinguishable from marks registered by companies such as Burberry for use on luxury goods, certainly they were made aware that the merchandise was potentially counterfeit when they received the seizure notices. Finally, the way Defendants' merchandise was packaged and shipped to the United States indicates some culpability. Defendants' handbags and wallets arrived at the various ports with flaps covering the marks on the merchandise. The flaps were subsequently removed, after delivery to Defendants. Furthermore, the way the merchandise was packaged indicates culpability. Defendants had the merchandise packaged such that generic merchandise, that is merchandise without any potentially counterfeit marks, was located on the tops and the bottoms of the pallets that arrived into the ports. Between the piles of generic merchandise was the merchandise bearing the counterfeit marks. The Court finds that this evidence could have been used to prove that the marks were substantially indistinguishable, as Defendants would not have gone to such great lengths to disguise the

merchandise had they not thought their marks were identical to or substantially indistinguishable from registered marks.

The next factor the Court must consider is whether the Government's comments were deliberate. The Court finds that, while the Government's comments were extensive, they were not deliberate. The Government's arguments at the November 4, 2010 hearing on Defendants' Post-Trial Motion indicated to the Court that counsel for the Government genuinely believed (1) he told the jury the correct standard for determining if the marks were substantially indistinguishable at trial and (2) he was correct in making the same argument at the hearing on the Post-Trial Motion. Thus, the Government did not deliberately set forth the wrong standard for the substantially indistinguishable element of the counterfeiting claim. With respect to the fifth factor, the Court agrees with Defendants' counsel that they did nothing to invite the Government's improper remarks.

### iii. The Effect of the Court's Curative Instruction

The final factor that the Court must consider is the effect of the Court's curative instruction. The Government argues that any conceivable prejudice against Defendants was cured by the Court's instructions. There is a presumption that juries obey limiting instructions. United States v. Francisco, 35 F.3d 116, 119 (4th Cir. 1994). The Court instructed the jury to compare the marks side-by-side to determine if they were substantially indistinguishable. If the jury found that the marks were substantially indistinguishable, the Court instructed the jury to consider whether Defendants' Marco Mark was a counterfeit

likely to cause confusion. The Government maintains these instructions kept any improper remark from being prejudicial.

Defendants, on the other hand, contend that the Court's curative instruction was not sufficient to overcome the Government's improper conduct. Defendants argue that the presumption that juries obey limiting instructions ceases to exist if the Government repeatedly makes improper remarks at trial. See United States v. Rich, 326 F. Supp. 2d 670, 682 (E.D. Pa. 2004) ("[a]t some point, a curative instruction cannot undo the damage of improper argument."). Defendants argue that the curative instruction was not sufficient in this case because, even after the instruction was given, the jury indicated to the Court that they were unable to remember the oral modifications made to the written instructions by sending the Court a note during deliberations asking if they had to first determine if the marks were substantially indistinguishable before determining if Defendants' Marco Mark was likely to cause confusion. Defendants argue that the jury's question, combined with the complex issues presented at trial, make it likely that not all jurors understood that, in making the substantially indistinguishable determination, they needed to make a side-by-side comparison of the two marks with their own eyes and not consider what the average consumer would think.

The Court finds that the curative instruction did, in fact, cure any prejudice created by the Governments' improper remarks. The curative instruction at issue reads as follows:

> The third element of the offense charged is that the defendant used a counterfeit mark on or in connection with goods. A mark is a word, name, symbol, or device or any combination thereof used to identify and distinguish

goods or services from those manufactured and sold by others and to indicate their source. A mark used on or in the sale of goods is known as a trademark.

A counterfeit mark is a mark that is spurious or not genuine or authentic. It is identical with or substantially indistinguishable from a mark in use and registered for those same goods on the Principal Register in the United States Patent and Trademark Office. Finally, a counterfeit mark is a mark the use of which is likely to cause confusion, to cause mistake, or to deceive.

Now, we had a lot of argument, a lot of information coming at you about this particular issue. And obviously, by now you recognize it is critical.

Now, the one thing that I want you to understand, that paragraph I just gave you outlines two separate issues. One, you have to determine whether or not the mark that is alleged to be counterfeit is identical to or substantially indistinguishable from the mark that is registered on the same goods in the Principal Register of the United States Patent and Trademark Office. Now, in order to carry out your responsibility as it relates to that part of these instructions, you have to compare the marks, the mark on the [sic] alleged to be counterfeit and the mark that is the genuine mark.

Now, you do that and you make a decision. This is based on your side-by-side comparison, use of your own eyes, and any other evidence that came into the record that might help you in that task. But it is for you to decide. If you decide that the mark is not identical or substantially indistinguishable, that pretty much ends the inquiry. That means it is not counterfeit. If you decide that it is substantially indistinguishable, then you have another task to deal with, and that task has to do with now that you have decided that it is counterfeit under the definition that I have given you, you have to decide whether or not this counterfeit mark is a mark the use of which is likely to cause confusion or cause mistake or to deceive. Everybody understanding that? It is two separate things. Now a lot of that got clouded up in some of these arguments and some of the discussion. What must be counterfeit is the mark itself, not the goods.

Excerpt from Jury Instructions 2:3–3:23, June 10, 2010, ECF No. 308.

In addition to this curative instruction, the Court gave two additional instructions

that work to negate any prejudice created by the Government's improper comments. Before

giving any instructions at all, the Court told members of the jury that they were to be guided by the Court, not counsel, on what the law is and that the instructions to be given after a brief recess would clear up any confusion created by the parties. Excerpt from Proceedings 25:19 – 26:5, June 10, 2010, ECF No. 296. Importantly, the Court gave this instruction less than one minute after counsel for the Government finished making the closing argument during which he repeatedly referenced the wrong legal standard for determining whether two marks are substantially indistinguishable. Thus, almost immediately after counsel for the Government made its closing argument, the Court told members of the jury that they were not to consider what the parties' counsel said the law was, but, instead to consider only what the Court would eventually say the law was.

Finally, the Court gave an instruction directing the jury to use the law explained by the Court, not by counsel. The instruction states: "[i]n determining what actually happened in this case – that is, in reaching your decision as to the facts – it is your sworn duty to follow the law I am now in the process of defining for you. . . . It is your duty to apply the law as I give it to you, regardless of the consequences." Jury Instruction No. 2.

The Court finds that the combination of the curative instruction, the instruction directing the jury to follow the law set forth by the Court and the direction to use the law as described by the Court that came immediately after the Government's closing argument were sufficient to negate any prejudice that may have resulted from the Government's arguing the wrong legal standard. The Court further finds that there is evidence that the jury obeyed the instructions. While the jury convicted Defendants of counterfeiting the Burberry

Check Mark, it acquitted Defendants of counterfeiting a "G" mark registered by Gucci America, Inc. ("Gucci") charged in count four of the Superseding Indictment. Thus, after hearing all of the Court's instructions, the jury was able to determine that Defendants' "G" mark was not substantially indistinguishable from Gucci's "G" mark, but that Defendants' Marco Mark was substantially indistinguishable from the Burberry Check Mark. Because it appears to the Court that the curative instruction worked to negate any potential prejudice against Defendants, the Court finds that Defendants are not entitled to a new trial, and Defendants' Motion is denied.

IV.    <u>CONCLUSION</u>

The Superseding Indictment returned against Defendants charged them with counterfeiting several registered trademarks. The evidence against Defendants was sufficient to justify a guilty verdict and a reasonable jury found that Defendant's Marco Mark did, in fact, counterfeit Burberry's Check Mark. Accordingly, Defendants' Rule 29(c) Motion for Judgment of Acquittal is DENIED.  Defendants moved for a new trial on the grounds that the Government's statements regarding whether Defendants' Marco Mark was substantially indistinguishable from Burberry's Check Mark were erroneous and prejudicial. The Court agrees with Defendants that the Government's remarks were erroneous and finds that the marks could have been prejudicial against Defendants. The Court further finds, however, that the curative instruction given the jury, combined with the directions to listen to the Court with respect to matters of law, negate any potential prejudice. Accordingly,

Defendants' Motion for a New Trial pursuant to Rule 33 of the Federal Rules of Criminal

Procedure is also DENIED.

Let the Clerk send a copy of this Memorandum Opinion to all counsel of record.

An appropriate Order shall issue.

_____/s/_____
James R. Spencer
Chief United States District Judge

ENTERED this __14th___ day of December 2010